FILED & ENTERED

APR 02 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| In re:<br><br>ROXANNA RAMEY and MARK JENKINS<br><br>      Debtor.<br>_____<br>ROBERT MITELHAUS,<br>      Plaintiff,<br>  v.<br>ROXANNA RAMEY and MARK JENKINS,<br>      Defendants. | Case No. 2:11-bk-59152 ER<br><br>Chapter 7<br><br><br><br>Adv. No. 2:12-ap-01365 ER<br><br>MEMORANDUM OF DECISION AFTER TRIAL<br><br>Date: October 2, 15 and 31, 2013<br>Time: 9:00 a.m.<br>Place: Courtroom 1568<br>    255 E. Temple St.<br>    Los Angeles, CA |
|---|---|

  On October 2, 15 and 31, 2013, the Court conducted a trial in this adversary proceeding.

Appearances were as set forth on the record. On the last day of trial, the Court ordered closing briefs to

be filed by January 3, 2014, and took the matter under submission as of that date. However, at a hearing

on February 4, 2014, the Court granted the Motion for Order Striking Defendants' Untimely Post-Trial

Brief filed by Robert Mitelhaus ("Plaintiff") and amended the submission date to February 4, 2014. For

the reasons set forth fully below, the Court awards judgment in favor of Plaintiff with respect to his claims pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6) against Mark Jenkins only.[1] This Memorandum of Decision shall constitute the Court's findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052.

# I
# FACTUAL BACKGROUND

On October 3, 2013, the Court entered an amended Pre-Trial Order ("PTO") (docket entry no. 80) which sets forth admitted facts at pages 2 to 7. The Court incorporates these admitted facts herein by reference.[2] These admitted facts establish that on June 11, 2003, Plaintiff, a licensed real estate salesperson, entered into an Independent Contractor Agreement ("Contract") with Nutec, whereby Plaintiff was to be paid commissions for real estate sold or leased.  PTO at 3.  Nutec terminated the Contract on July 19, 2005.  Id.  On September 23. 2009, Plaintiff obtained a judgment against Debtor, Mark Jenkins ("Jenkins"), and Nutec Enterprises, Inc. ("Nutec") in the amount of $289,526.62 ("Judgment") following a three day arbitration which was requested by Debtors and Nutec.  Id. at 3-4. The arbitrator found "that Nutec was not the alter ego of [Roxanna Ramey ("Ramey")]", and no damages were awarded against her.  Id. at 6.  No party has sought to reconsider, vacate or appeal the Judgment, and no payments have been made to Plaintiff pursuant to the Judgment. Id. at 4.  Plaintiff is owed $71,202.38 in commissions.  Id. at 5.

---

[1] At the end of the second day of trial after Plaintiff rested, Debtors' counsel made a motion which he classified as either a motion for a directed verdict or "a motion for a judgment based upon the evidence submitted by [P]laintiff." Transcript of Trial on October 15, 2013 ("Transcript II") at 349.  After entertaining argument by both Plaintiff and Debtors, the Court took this motion under submission. Transcript II at 146. For the reasons set forth fully herein, the Court denies the Debtors' motion.

[2] On the first day of trial, the Court indicated that it was not inclined to accord the arbitrator's decision much deference, and that it was not going to be bound by it.  Transcript of Trial on October 2, 2013 ("Transcript I") at 4-9 and 16-17.  On the second day of trial, Debtors' counsel made an oral motion to amend the PTO based on these comments of the Court, and the Court took this oral motion under submission. Transcript II at 313-14.  The Court has reconsidered its statements made on the first day of trial regarding the arbitrator's decision, and finds that because the arbitrator's award was confirmed by the state court in a judgment, this Court must give the arbitrator's award the same "full faith and credit" it would be entitled to under California law.  In re Houng, 499 B.R. 751, 760 (C.D.Cal. 2013). Consequently, the Court denies Debtors' oral motion to amend the PTO.

The main issues at bar were the intent elements of Plaintiff's 11 U.S.C. §§ 523(a)(4) (larceny) and 523(a)(6) claims. The crux of Plaintiff's position is that Debtors wrongfully withheld commissions which became payable to him after he left Nutec, and that Debtors did so willfully and maliciously, with intent to convert the commissions. Debtors admit that Plaintiff had four escrows opened at the time of his termination which eventually closed, and that the commissions earned on these transactions were deposited into Nutec's general account as they came in. Transcript I at 28-29, 47, 148 and 166. The record indicates that Debtors gave the following three reasons for withholding Plaintiff's commissions:

1. Shortly after Plaintiff was terminated, KS Management LLC ("KS") served Nutec and Jenkins in July of 2005 with a Complaint for: (1) Breach of Contract; (2) Breach of Guaranty; and (3) Negligence ("KS Action"). Plaintiff's Exhibit 12. Plaintiff was also a named defendant in the KS Action. Id. Debtors testified that Plaintiff's commissions were withheld until they "got through" this litigation, and because they did not know what the "implications" of this action would be. Transcript I at 29 and 149; Transcript of Trial on October 31, 2013 ("Transcript III") at 36. Debtors were using Plaintiff's commissions as an offset until the litigation was resolved. Transcript I at 111. Once resolved, Debtors testified that they still withheld commissions, because they discovered the alleged unpaid lease commissions earned in connection with Plaintiff's dealings with Mr. Nasr described below. Transcript I at 111, 150-151. Ramey testified that she did not know whether any person at Nutec attempted to determine the amount by which the commissions due Plaintiff exceeded the amounts spent by Nutec in defending against the KS Action. Transcript I at 156-57. A former agent of Nutec, Larry Wims ("Wims"), testified that he was sued in connection with his conduct at Nutec, but that Nutec did not withhold any of his commissions earned on other transactions. Transcript II at 240.

2. Debtors withheld Plaintiff's commissions, also because they learned that Plaintiff was leasing office space in connection with a building owned by Mr. Nasr with a street address of 24911 Avenue Stanford ("Nasr Building"), and Nutec was not getting paid for it. Transcript I at 53-54. The gross commissions generated by these lease transactions totaled approximately $69,109.29, and Nutec would have been entitled to approximately $7,000 of this amount in fees and commissions. Transcript I at 56; Exhibit 93. Jenkins testified, however, that no commissions were paid with respect to the transactions, except for the commissions related to the QualCorp, Inc. lease. Transcript I at 57. Jenkins further testified that Nutec still withheld those commissions which exceeded the amounts expended in the KS Action and the $7,000 due Nutec from the lease transactions, because Plaintiff told him that Nutec would be paid once he leased the Nasr Building and sold it. Transcript I at 61. Jenkins believes that Plaintiff received a $500,000 to $700,000 commission from the sale of the Nasr Building, while Nutec received nothing from the sale. Transcript I at 117-18; Transcript III at 39-40. Nutec has not taken any action to collect the commissions it believes are owing from the transactions involving Mr. Nasr. Transcript I at 124. Plaintiff testified that Nutec was paid for the lease transactions, and that when the Nasr Building sold, he received just under $400,000 in commission. Transcript II at 299 and 328.

-3-

3.  Ramey testified that Plaintiff did not list the four transactions for which he did not receive commissions on the pending transaction board, and did not turn in the contracts. Transcript I at 170. Consequently, Ramey did not know of these four transactions until the commission checks were received from escrow. Transcript I at 148-49, and 165-166. In order to be paid a commission, an agent would have to turn in a file with all completed documents. Transcript I at 149 and 170. Former agents for Nutec, Al Taylor and Wims, confirmed that in order to get paid, escrow had to close and the agent had to turn in a file prior to the close of escrow. Transcript II at 226 and 231.

Plaintiff testified that when he was terminated, Jenkins handed him a letter which requested, in part, copies of all pending transactions, closed transactions, leases and lease agreements. Transcript II at 262. Plaintiff made the copies and gave them to Helen Hillo ("Hillo"), the transactions coordinator for Nutec. Id.; Transcript III at 71. Shortly after Plaintiff left Nutec, Hillo called him and asked him about open transactions, and he responded "Soledad Canyon, Placerita, Smokey Bear, and on the leases, the Prudential expansion lease as well as the Dr. Mar lease" were open. Transcript II at 274. After this conversation, Plaintiff testified that there were no further requests made of him for additional information regarding these transactions. Id. Plaintiff never received an objection to payment of his commissions on the basis that he did not turn in files. Transcript II at 281. Plaintiff requested the closing documents on the four transactions pending upon his termination, but never received them. Transcript II at 282. Ramey testified that they did not receive completed files at the time of closing. Transcript III at 36.

Plaintiff further testified that prior to the commencement of his state court action against Nutec and Debtors on December 21, 2007, Debtors gave him no reason as to why they were not paying his commissions. Transcript II at 295. Debtors did not tell Plaintiff that they were withholding his commissions because he did not turn in the required files, stole a client or owed them legal fees. Id. Nutec and Debtors first raised the Nasr related transactions as a reason for withholding commissions during the arbitration in 2009, and not before then. Transcript II at 299 and 343.

Plaintiff argues that the circumstantial evidence shows that Jenkins had a subjective intent to injure Plaintiff for purposes of his § 523(a)(6) claim and an intent to convert the withheld commissions for purposes of his § 523(a)(4) claim. Specifically,

- up until the time he was terminated, Plaintiff was paid his commissions within twenty-four hours of the closing of escrow. Plaintiff's Post-Trial Closing Brief ("Plaintiff's Brief") at 5; Transcript II at 258-59.

- Jenkins testified that no accounting was ever performed to determine the amount due to Plaintiff. Plaintiff's Brief at 5; Transcript I at 46-47.

- There was no contractual basis to withhold Plaintiff's commissions based on the KS Action. Paragraph 8(E)(5) of the Contract permitted withholding of commissions when there was a known pending claim related to a transaction for which the licensee had not been paid; the

    withheld commissions had to be generated from the transaction giving rise to the pending claim. Closing Brief at 7; Exhibit 1. Plaintiff asserts that none of the commissions withheld were related to the KS transaction.  In addition, if Debtors believed that they had errors and omissions insurance when the KS Action was commenced in July of 2005, it is unclear why they would withhold Plaintiff's commissions to cover against any potential losses. Plaintiff's Brief at 8. Even when the KS Action was dismissed, Nutec did not attempt to reconcile the amount due to Plaintiff after consideration of its out-of-pocket expenses incurred in connection with this lawsuit. Closing Brief at 8; Transcript I at 47, 156-57.

- Plaintiff further contends that he turned in all files which would have entitled him to commissions on transactions pending upon his termination. Closing Brief at 8; Transcript II at 262, Transcript III at 79 and 83-84; Exhibit 20. Nutec received payments on these transactions. Closing Brief at 9.

- There was no basis to withhold Plaintiff's commissions based on the Nasr transactions, because Ramey testified that Nutec had received the entire gross lease commissions of $69,109.29. Closing Brief at 9; Transcript III at 46. Moreover, there was no listing agreement between Nutec and Mr. Nasr for the sale of the Nasr Building. Transcript I at 61. "Without a listing agreement, no commission is due. [Transcript I at 116]. *See* Civil Code § 1624(a)(4)." Closing Brief at 10. Finally, Nutec never made a claim for any part of the commissions generated by the Nasr related transactions.

## II
## DISCUSSION

**A. Plaintiff's claim is nondischargeable as to Jenkins pursuant to § 523(a)(4) based on larceny.**

    The Ninth Circuit has established that "'[f]or purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny, but, rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of the same.'" In re Ormsby, 591 F.3d 1199, 1205 (9th Cir. 2010), *citing*, 4 Collier on Bankruptcy ¶ 523.10[2] (15th ed. rev. 2008). "Felonious" for purposes of § 523(a)(4) larceny is defined as "wrongful; . . . done without excuse [or] color of right.'" Ormsby, 591 F.3d at 1205 (citations omitted). "Generally, a creditor seeking to except a debt from the debtor's discharge bears the burden of proof to establish by a preponderance of the evidence all of the elements of the statutory exception to discharge upon which the creditor relies. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)." Mele v. Mele (In re Mele), 501 B.R. 357, 363 (9th Cir. BAP 2013).

//
//

### 1. The withholding of Plaintiff's commissions was a felonious taking.

Plaintiff has demonstrated by a preponderance of the evidence that the withholding of his commissions in the amount of $71,202.38 ("Commissions") with respect to the escrows pending at the time of his termination was wrongful for purposes of the first element of larceny. See Exhibit 11 at p. 23 (Total commissions due Plaintiff was $71,202.38). Pursuant to paragraph 8(E)(5) of the Contract, Nutec could only withhold these Commissions if they related to the transaction giving rise to the claim(s) at issue. Plaintiff's Exhibit 1 at p.2. Since the Commissions were earned in connection with the transactions identified on page 1 of Exhibit 20, and were not related to the KS Action or the Nasr related transactions, Nutec had no contractual basis to withhold them. In addition, no other basis authorizing the withholding of these commissions was established at trial.

Plaintiff's alleged failure to turn in the requisite files prior to closing would not justify the nonpayment of the Commissions.[3] Both Jenkins and Ramey testified that when a file for a transaction was complete and reviewed, a commission disbursement or CDA would be issued to escrow, which would allow the sales agent to be paid directly by the escrow company. Transcript 1 at 30 and 138. Ramey further testified that although rare, some escrow companies did not accept CDAs. Id. Consequently, in those circumstances, the escrow company would pay all of the commissions directly to Nutec, which presumably would then disburse the agent's share. Transcript I 31-32 and 138.

This apparently is what occurred with respect to those escrows that closed after Plaintiff's termination, because both Jenkins and Ramey testified that Nutec received checks for these transactions from escrow. Transcript I at 30 and 148. Consequently, the record indicates that even if Plaintiff did not turn in completed files, this would not be cause for Nutec to withhold the Commissions from Plaintiff forever; rather, the failure to turn in files would only have precluded Plaintiff from being paid directly by the escrow company. Based on the foregoing, the Court finds that the nonpayment of the Commissions was a wrongful taking for purposes of larceny.

---

[3] The Court notes that it is Plaintiff's position that he turned in all requisite files. Ramey, however, testified that the files returned by Plaintiff were not complete, and that they never received completed files at the time of closing. Transcript III at 36 and 66. Notwithstanding, the following discussion provides that even if Plaintiff did not turn in the requisite files, it was not a valid basis for Nutec to withhold the Commissions altogether.

-6-

**2. Jenkins withheld the Commissions with the intent to deprive Plaintiff of them.**

Plaintiff has further proven by a preponderance of the evidence the requisite intent for larceny pursuant to § 523(a)(4). As noted above, Nutec/Debtors were not entitled, contractually or otherwise, to withhold the Commissions. Moreover, Debtors admitted that no effort was made to determine whether Plaintiff was entitled to any payment once the KS Action was resolved, and Nutec's commissions regarding the Nasr lease transactions were calculable. Transcript I at 46-47, 156-57. Specifically, Nutec was out-of-pocket with respect to the KS Action in the approximate amount of $28,000 due to fees and costs, and the Nasr lease transactions would have yielded Nutec approximately $7,000 in fees and commissions. Transcript I at 53 and 56.[4] Consequently, although the total amount which Nutec thought Plaintiff owed it was less than the $71,202.38 in Commissions due Plaintiff, the record indicates that Debtors made no effort to determine if Plaintiff should have been paid at least a portion of the Commissions, evidencing that Jenkins and Nutec had no intent to pay Plaintiff. Consequently, the Court finds that the intent element for larceny is satisfied.

Based on the foregoing, the Court awards judgment in favor of Plaintiff with respect to his § 523(a)(4) claim.

**B. Plaintiff's claim is nondischargeable as to Jenkins pursuant to 11 U.S.C. § 523(a)(6).**

The Ninth Circuit has established that:

> . . . Both willfulness and maliciousness must be proven to block discharge under section 523(a)(6).
> In this Circuit, '§ 523(a)(6)'s willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct.' The Debtor is charged with the knowledge of the natural consequences of his actions.
> . . .
> 'A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'

Ormsby, 591 F.3d at 1206-07 (citations omitted).

---

[4] Jenkins also testified that Nutec was entitled to approximately $100,000 in commissions due to the sale of the Nasr Building. Transcript 1 at 54. Nutec, however, had no sales listing agreement with respect to the Nasr Building. Transcript I at 61, 151. Pursuant to Cal.Civ.C. § 1624(a)(4), an agreement authorizing a broker or agent to sell real estate must be in writing or the contract is invalid. Since there was no listing agreement between Nutec and Mr. Nasr, no commissions could be collected with respect to this transaction.

-7-

As with the § 523(a)(4), Plaintiff must prove the foregoing by a preponderance of the evidence. Mele, 501 B.R. 357.

### 1. The Commissions were withheld willfully.

With respect to "willfulness," as discussed fully above, Nutec and Jenkins had no basis, contractual or otherwise, to withhold Plaintiff's commissions. Specifically, withholding was not permitted pursuant to paragraph 8(E)(5) of the Contract, because the Commissions were not earned in connection with the KS and/or Nasr transactions. Plaintiff's Exhibit 1 at p.2. Moreover, the record indicates that there was no real effort to offset amounts due Plaintiff against amounts for which Jenkins/Nutec believed Plaintiff may be liable. Once the KS Action was resolved, and the gross commissions for the Nasr leases were known, no one at Nutec attempted to calculate what part, if any, of the commissions could be paid to Plaintiff. Transcript I at 46-47, 156-57. In addition, Plaintiff testified that he was given no explanation for the withholding until he commenced his action against Debtors and Nutec in December of 2007. Transcript II at 294-95. The foregoing demonstrates that Jenkins and Nutec were engaged more in self-help efforts than in offsetting, and establishes Jenkins' belief that injury was substantially certain to result from the withholding of the Commissions. Consequently, the Court finds that the willful element is satisfied for purposes of § 523(a)(6).

### 2. The Commissions were withheld maliciously.

For the reasons set forth fully above, Plaintiff has established the "malicious" prong of § 523(a)(6) by a preponderance of the evidence. Specifically, the withholding of the Commissions was wrongful and intentional, because it was not authorized by contract or otherwise. The withholding necessarily caused injury in depriving Plaintiff of his compensation, and since it was not authorized, it was done without just cause or excuse. Consequently, the Court also finds that the malicious element is satisfied.

Based on the foregoing, Plaintiff's claim is also nondischargeable pursuant to § 523(a)(6).

//

//

-8-

**C. The Judgment, however, is dischargeable as to Ramey.**

Plaintiff acknowledges that the Judgment was not entered against Ramey, but relies on the Ninth Circuit Bankruptcy Appellate Panel's ("BAP") decision in Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 287 B.R. 515 (9th Cir. BAP 2002) for the proposition that Jenkins' intent required for larceny and willful and malicious injury can be imputed to Ramey based on an agency relationship. Closing Brief at 17, 20-21. Tsurukawa, however, involved the imputation of fraud committed by the non-debtor husband to his wife, the debtor, under agency principles for purposes of nondischargeability pursuant to U.S.C. § 523(a)(2)(A). Id.

However, in an unpublished decision in Luc v. Chien (In re Chien), 2008 WL 8240422 *7 (9th Cir. BAP), the BAP held that:

> The *Tsurukawa* analysis is thus specific to fraud and to apply it to willful and malicious conduct is a quantum leap we are not prepared to make. The plain language of § 523(a)(6) excepts from discharge a willful and malicious injury *by the debtor* to another entity (emphasis added). Further, the standards set forth in *Gieger* and *Su* compel a more measured approach. We harken back to *Geiger* where the Supreme Court, in the simplest terms, said a debtor must intend to injure the creditor before a claim is excepted from discharge based on malice.[ Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998)]. The Ninth Circuit in *Su* has refined the willful prong to require the debtor to subjectively intend to inflict injury or to believe that injury is substantially certain to occur as a result of *his* conduct. [Carrillo v. Su (In re Su), 290 F.3d 1140, 1144 (9th Cir. 2002) (emphasis added)].
> Even if Debtor was [the actor's] partner, agency principles do not project a state of mind on [Debtor]. Behaviors and outcomes might be imputed, maybe even misrepresentations, but subjective thoughts cannot be. Under no accepted legal principles can [another's] subjective willfulness be rested upon Debtor.

Id.

Although the BAP's decision in Chien is not binding, the Court finds the foregoing reasoning persuasive and applicable herein. Specifically, as in Chien, simply because there may have been an agency relationship between Jenkins and Ramey, Jenkins' willful and malicious intent cannot be imputed to Ramey. Consequently, Plaintiff's claim is dischargeable as to Ramey pursuant to § 523(a)(6).

The only case relied on by Plaintiff to impute the requisite intent to convert to Ramey for purposes of larceny under § 523(a)(4) is Connecticut Attorneys Title Insurance Company v. Budnick (In re Budnick), 469 B.R. 158 (Bankr. D.Conn. 2012). First of all, this decision is not binding on this Court.

Secondly, a careful reading of Budnick indicates that the bankruptcy court therein imputed the non-debtor's fraud to the debtor in connection with embezzlements perpetrated by the non-debtor for purposes of a § 523(a)(2)(A) claim. Budnick, 469 B.R. at 176. The Budnick court declined to grant relief pursuant to § 523(a)(4) based on the embezzlements "because nondischargeability under Section 523(a)(4) adds nothing to the relief granted . . . under Section 523(a)(2)(A)." Id. Consequently, since Plaintiff has provided no authority for this Court to impute Jenkins' larcenous intent to Ramey, the Court also finds that Plaintiff's claim is dischargeable as to Ramey pursuant to § 523(a)(4) based on larceny.

**D. The attorney's fees and costs awarded Plaintiff by the arbitrator and confirmed in the Judgment are also nondischargeable. Plaintiff's claim is nondischargeable in the amount of $163,057.32.**

Plaintiff also asserts that the attorney's fees and costs awarded him by the arbitrator and confirmed in the Judgment are collectible as costs under California law. The real issue, however, is whether the fees and costs in the Judgment are nondischargeable, and the Court finds that they are in the amount of $88,657.94.[5] See Gosney v. Law (In re Gosney), 205 B.R. 418, 422 (9th Cir. BAP 1996)[6] (citation omitted) ("'If the underlying judgment includes attorney's fees based on state law, these are allowed to survive the discharge.'"). The Court further acknowledges that Plaintiff will be seeking fees and costs incurred in this adversary proceeding pursuant to a separately filed motion. Closing Brief at 22.

The Court notes that Plaintiff's Closing Brief does not clearly state the exact amount of Plaintiff's claim which should be nondischargeable. While it is clear that the portion of Plaintiff's claim attributable to the Commissions in the amount of $71,202.38 is nondischargeable for the reasons set forth above, Plaintiff also refers to the $62,000 in commissions from the Nasr lease transactions, and that he should have been paid commissions in the total approximate amount of $133,000 ($71,202.38 + $62,000).

---

[5] $6,375 (Arbitrator's fees and costs) + $80,742.94 (Attorneys' fees and costs incurred in arbitration) + $1,540 (Attorneys' fees and costs incurred in confirmation of arbitration award) = $88,657.94. PTO at 3-4.

[6] Gosney was affirmed in an unpublished decision at 161 F.3d 12 (9th Cir. 1998).

-10-

Closing Brief at 13. In the Conclusion, Plaintiff asserts that the "amounts owed under the Judgment are nondischargeable." Closing Brief at 23.

The Court first notes that the arbitrator found that Plaintiff waived his right to payment from Nutec for the Nasr lease commissions. Plaintiff's Exhibit 11 at 22-23. Since the Court must give "full faith and creditor" to the arbitrator's decision, the Court finds that Plaintiff's nondischargeable claim does not include the $62,000 in Nasr lease commissions. Houng, 499 B.R. at 760. In addition, the compensatory damage portion of the Judgment includes Plaintiff's costs in defending the KS Action in the total amount of $77,284.50.[7] Plaintiff's Exhibit 11 at 24. There is no showing that this amount should be nondischargeable pursuant to § 523(a)(4) or (a)(6); therefore, the Court also excludes this amount from Plaintiff nondischargeable claim. The Court, however, finds that the portion of the Judgment attributable to Plaintiff's payment for errors and omissions insurance which was not purchased in the amount of $3,197.00 is also nondischargeable pursuant to § 523(a)(4). Specifically, Nutec/Jenkins' taking of these payments was wrongful and done with the intent to deprive Plaintiff of these sums to the extent that the insurance was not purchased and the payments were not returned to Plaintiff.

Based on the foregoing, the Court finds that Plaintiff's claim is nondischargeable as to Jenkins pursuant to § 523(a)(4) and (a)(6) in the total amount of $163,057.32.[8]

//

//

//

---

[7] Compensatory damages in the Judgment total $151,683.88 which is comprised of $71,202.38 (Commissions) + $77,284.50 (Plaintiffs attorneys' fees incurred in KS Action) + $3,197 (Amounts paid for errors and omissions insurance which was not purchased). Plaintiff's Exhibit 11 at 23-24.

[8] Plaintiff makes no reference to the pre-judgment interest awarded in the amount of $49,184.50. PTO at 4; Plaintiff's Exhibit 11 at 25. The Court is inclined to include such interest in Plaintiff's nondischargeable claim. See Gosney, 205 B.R. at 421 (citation omitted) ("[W]hen an underlying debt is nondischargeable, 'prepetition interest, [which] forms an integral part of the underlying debt . . . is also nondischargeable.'"). However, the calculation in the Judgment for this interest appears to be based on a total compensatory damage amount of $151,683.88, which this Court has reduced by $77,284.50 as set forth above

# III
# CONCLUSION

Based on the foregoing, the Court awards judgment in favor of Plaintiff with respect to Jenkins only pursuant to 11 U.S.C. §§ 523(a)(4) (larceny) and (a)(6) in the total amount of $163,057.32. The Court shall prepare a judgment consistent with this Memorandum of Decision.

###

Date: April 2, 2014

*Ernest M. Robles*
United States Bankruptcy Judge